Good morning, Your Honors. May it please the Court, Cotty Ozerpely, on behalf of Plaintiff Appellant Dale Bozzio. I'd like to reserve three minutes of argument for rebuttal. Your Honors, we're here appealing the lower court's order dismissing our complaint on a 12B6 motion. The District Court committed an error of law by not following this court's ruling in United States v. Standard Beauty Supply Stores. Instead, the District Court created a new closely related standard that impermissibly expands the application of California Tax and Revenue Code Section 23301 beyond the intent of the legislature. The second error of law the District Court committed was making adverse inferences against my client, the non-moving party, on a pleading motion and denying permission to appeal. Our First Amendment complaint pled that Dale Bozzio was an intended third-party beneficiary under the terms of the contract. This was specifically pled in paragraphs 69 to 74 of the complaint. Capital Below did not challenge the sufficiency of this pleading, and the lower court did not dismiss the complaint on the basis that her third-party beneficiary status was not adequately pled. Having sufficiently pled intended third-party beneficiary status under California law, Dale Bozzio was asserting her own independent, separate, distinct rights from the underlying suspended corporation. So under California third-party beneficiary law, if the promisor is incapacitated, he or she is suspended, can the third-party beneficiary have more rights than the promisor? Or I guess the promisee in this case? Not more rights, Your Honor, but they don't lose their own independent, separate rights. And what case stands for that? I know in the CalWestern case that opposing counsel cites, it was an assignor-assignee, and the court said, no, the assignee can't sue on the contract because the assignor is suspended. So what case says if the corporation promisee is suspended, the third-party beneficiary can nevertheless sue? Well, I would cite, Your Honor, to three cases. First would be the Performance Plastering v. Richmond case. And in that case, the underlying corporation was suspended, but the court allowed the party to proceed regardless. But the 23-301 issue was never raised in that case, right? That is correct. But nevertheless, the court permitted the party to proceed regardless of the fact that the underlying corporation was suspended. But the only issue there was whether the settlement agreement was any good, and the void, and it hasn't been voided. So it doesn't really address this question where the 23-301 suspension is squarely raised. That is correct, Your Honor. But there are other cases that we've cited, the Shower v. Mandarin Gems case and Johnson v. Holmes Tuttle, where it is clear under California law that there are distinct rights, there are separate rights. And if you look at those two cases, if you would imagine, Your Honors, that the husband who purchased the ring for his intended wife, turns out the ring was worth half the value, if he bought that on his company credit card and that company had become suspended, would that diminish or take away his former wife's right to pursue her own separate cause of action? Of course not. She has that separate cause of action under California Civil Code Section 1559, just like in Johnson v. Holmes Tuttle. If the car that had been purchased was purchased as a company car and the company had become a suspended corporation, would the injured party, the public who was the intended third-party beneficiary of that insurance contract, would they lose their right to bring? I don't know, but I didn't see a California case on point. And so that was my question. If performance plasters v. Richmond is the closest case on point, it seems like California courts haven't actually addressed this specific issue. I agree, Your Honor. This specific issue has not been addressed. But what I would submit to Your Honor is that the Standard Beauty case gives us guidance with respect to what a Federal district court is supposed to do. And you're not supposed to go outside the confines of the plain text of that statute. You're not supposed to apply it to new novel fact scenarios. You're not supposed to make it punitive in nature. You're not supposed to, under Standard Beauty, just pierce the corporate veil, nor are you supposed to just incapacitate a third-party beneficiary. The district court didn't address the effect of the look solely to clause in the agreement. So why the opposing counsel argues in the opposing brief that the look solely to clause is enough? Yes, Your Honor. Let me explain that. That nearly identical clause has been analyzed by other courts, the Katena court, for example. And the look solely to clause only comes into play if and when Capital Records in the first instance had paid the money it owed to the loan-out corporation. The Katena court said it makes no sense. Another reasonable interpretation of that clause is once Capital Records makes the payment to the loan-out corporation, then the look solely to clause comes into play. It makes no sense for the artist to, in essence, sue themselves to try and recover money that was never paid in the first place. So under California law, help me understand. The look solely to clause seems to be fairly plain, but I guess you're in the complaint. Your client gives another interpretation of what that clause means and cites two other parts of the artist's declaration. So what would a Cal – how would a California court have to deal with that on a motion to dismiss or demur? The California court would look to the contract and interpret it on a pleading motion such as this in a light most favorable to my client. And if you look at the asterisk, there's a clear asterisk that makes it, in my mind, a reasonable interpretation, that you only invoke, or that look solely to clause only comes into play once Capital Records first lives up to its obligation to make payments to the loan-out corporation. And the Katena court did this exact analysis and found that to be a reasonable interpretation and not a basis to dismiss that action. So did your client present any extrinsic evidence of a different interpretation or just pointing to other parts of the contract? Well, that, Your Honor, actually goes to the heart of our second point, which is that this court made impermissible assumptions and presumptions about my client. And if we had been provided the opportunity to plead, we could have rebutted all of those assumptions and negative presumptions that shouldn't have been made against my client on a pleading motion. You know, the Court here stated in the underlying – in the order, presumably she could take action to revive the corporation. Well, that's a presumption that's negative against my client, and it's simply not true. Capital Records holds the royalty statements that are required in order for my client to be able to revive the corporation. They will not provide them to my client. They refuse to provide them to my client. So there is no ability to revive the missing persons corporation? There perhaps could be, but Capital Records holds that ability and refuses to provide it. They have never provided my client with royalty statements. We've asked them for them. They've refused to provide them. They say only Missing Persons, Inc. can ask them for them. You're Dale Bozzio. We're not going to talk to you. You're a nonentity to us. What about California Tax and Revenue Code Section 23305B? Yes. Again, that would require us to go back in and pay the back taxes. Well, not necessarily. My understanding is there's a provision by which the State could reinstate the corporation in good status if it makes the decision that doing so and restoring capacity to sue is likely to get the back taxes paid. Was that explored? That was not explored, Your Honor. But again, this, in my assessment, misses the point that Dale Bozzio, as the intended third-party beneficiary, shouldn't be required to approve or plead these negative assumptions against her. She has her own independent, separate cause of action under California law, under Section 1559. But getting back to my question, I just want to make sure that what the Court found is that this would effectuate an end run, those aren't my words, not hers, around the California Corporations Code. And so that's why I want to know whether or not there was an attempt by your client to restore the corporation to good status without going through, jumping through the hoops of paying the back taxes, for which I think she would need the royalty statement. Right. Well, what I can tell you, the attempt made was, the attempt was made to contact Capital Records, in our mind, to get the royalty statements, to see what may or may not have been owed in terms of back taxes and proceed in that fashion. And we were met with a roadblock. So she wasn't able to restore the corporate status. That's correct. So is that in the record? What is in the record is a letter that I wrote to Capital Records requesting that they rectify the ills here, and they wrote us back and said, you're not the appropriate party, we're not going to talk to you. Is the refusal in the record, sir? The letter that they wrote back to me is in the letter. Could I get that citation when you get a minute? Maybe when you come back. I don't want to take your time now. Certainly, Your Honor. So what the – yes. So can I just ask, related to that question, to get to the district court's dismissal without leave to amend. So if we agreed that, just assuming that the district court was right that 23301 blocks the third-party beneficiary from suing, if the corporation in fact can't be revived or if your client wouldn't be able to revive it, then the district court would have been right to dismiss without leave to amend. Is that right? Well, I would disagree, Your Honor. I would say we pled both as a real party in interest and an intended third-party beneficiary. And what the court would need to do is make an analysis, which is what the Goldman Corp. did, which we submitted to you in our supplemental authority. You first look to make a determination and you say, who is the moving party here? Is the suspended corporation the moving party or is some other entity that has their own independent separate cause of action? That's the threshold question that should be asked. And 23301, in the case law interpreting it, standard beauty, they say that if it's not the suspended corporation, if it's not an assignee or someone standing in the way, then 23301 is inapplicable. And my client never sued. You will find nowhere in this complaint did my client say that she was suing on behalf of missing persons, the loan-out corporation. She pled specifically her own independent rights as a third-party beneficiary. Paragraphs 69 to 74 could not be more clear. And ironically, that's what, in part, what the district court relied upon in finding that any attempt to amend would be futile because she thought only the corporation had the cause of action. Well, actually, what that's – what the Court said is regardless of the fact of whether or not Dale Basio has her own independent right, and went on to create this new closely related standard that is nowhere to be found in the statute, it is nowhere to be found in any California court or any Federal district court. It's kind of beside the point, right? I understand that you were concerned that the Court had read into the complaint too much about your client being the front person for the band and presumably being in charge, but really anybody could come along and revive that corporation, right? You've got a different problem because you didn't have access to the royalty statements, but it's not her capacity as front-person lead singer that allows her to revive the corporate status, right? That's true. But it's also the fact that she is an intended, express intended third-party beneficiary under the contract. She has her own right. The fact that the suspended corporation is almost irrelevant because she has her own right. If you – if Your Honors affirm this lower court decision and this new closely related standard, you are going to get a flood of litigation because this is an imprecise standard that has never been used before. There is no guidance as to what closely related means. Is an officer closely related? Is a director closely related? Is 49 percent closely related? And that's exactly what Judge – Judge Ilston looked at the cases that this Court used, the Amesco case and the Kaufman and Broad case, and she held that they were inopposite because those were different circumstances. Capitol Records has not cited a single case or any authority where an intended third-party beneficiary is incapacitated because of Section 23301. Do you want to reserve the rest of your time? I would like to. Thank you, Your Honor. Thank you. Good morning, and may it please the Court. My name is Michelle Goodman for Capitol Records, the defendant and appellee. I want to start at the very basic beginning premise of the argument by appellants, and that is the argument that Ms. Bazzio has her own independent separate right under this contract. Because I've heard him say it, I've heard him say it repeatedly. She does not. He – that is an allegation. It is a conclusory allegation. This Court and the district court is not required to accept mere conclusions as true, especially if they contradict the fact – the actual contract incorporated into the complaint. Do you disagree that Bazzio, Ms. Bazzio, is a third-party beneficiary of the contract? I do disagree that she is an intended third-party beneficiary. As you know, there are two types of third-party beneficiaries. There is an intended third-party beneficiary who has a right to sue on the contract, and there is an incidental third-party beneficiary. She is an incidental third-party beneficiary with no right to sue on the contract. And that is clear from the contract's terms. Are you referring to the look solely to clause? Is that what makes the difference, or what makes the difference here? Because the contract, the context and the language of the contract clearly indicates that the individual performers are supposed to benefit from this deal between missing persons and capital. So it's hard to see why she isn't a third-party beneficiary under California law. Well, and let me explain that, because I think under California law there are numerous cases that make it very clear that she is not an intended beneficiary. To answer your first question, you look at the contract as a whole. First, the contract was the whole reason that contract exists, was to replace the prior contract, which was a contract between capital and the individual members of the band, individually and collectively, with a new corporation. That was the whole purpose, was to take them out of it and then ---- Was this for tax reasons? Is that what's the ---- Your Honor, I don't think it's in the record what the reasons are. I think it is ---- It's tough, though, because we assume that it's tax or it's liability or it's some kind of corporate. That's why people establish corporate forms. And without that, the intended third-party beneficiary analysis is difficult, getting back to Judge Akuta's question. Well, if you look at the fact that it was created for the benefit of probably both sides, right, because capital, I'm sure, benefited from it as well, because understand these are three individuals, and capital is making a single royalty payment. So it is a lot easier for capital to make a single royalty payment to a corporation. But ---- Capital didn't form the corporation. The three individuals did, right? Three or four, whatever it was. Correct. So presumably, they viewed it as beneficial to them. Correct. And the mere fact that you form a corporation to benefit from the tax, liability or whatever benefits you get from forming a corporation does not make you an intended beneficiary of every contract signed by the corporation. Certainly not. But I'm waiting to hear your best answer for why she's not a third-party beneficiary to this contract. She's not a third-party beneficiary because she ---- Capital undertook the obligation to pay the corporation missing persons, and she agreed that she would look solely to capital. Okay. So you're relying on the look solely to clause. The district court didn't want to deal with that, presumably because other courts had said it was ambiguous. So why not under California law, it would be improper if the language was reasonably susceptible to her interpretation, and she points to other sections of the contract, and other district courts have so found, it would be improper to grant a dismissal on that look solely to basis. Well, let me address that, because she doesn't point to other sections of the contract, and she doesn't point to any court that has held this particular clause is ambiguous. This clause is not ambiguous. And well, they cite to, I think, like paragraphs, it was like 87 or something in the complaint, which says in the event ---- I think the theory is that there's some language saying in the event that missing persons goes missing, then it's the deal is between capital and the individual artist. Allow me to read the clause itself, Your Honor. The clause says, and this is at the excerpts of record, page 241. For the express and direct benefit of capital, I, because this is signed by the artist, agree to look solely to company, meaning missing persons, for the payment of my fees and or royalties, as the case may be, and will not assert any claim in this regard against capital. And then it has an asterisk that says, unless capital shall, pursuant to the capital company agreement, enforce its rights directly against the undersigned, in which case the undersigned shall have the right to look to capital for such payment, provided the company shall not have the right and shall not look to capital for payment. But then they also, you should look at, their argument is that one, I think it's G, which suggests what I was saying, their argument is, well, under G, when missing persons is gone, then the deal is between company and the individual artist. So there's some, there's some evidence in the contract that it was contemplated that company and artist could have a direct relation. I think, I take it that's their argument. That is their argument, but it is not supported by the plain language of the contract. That, if you actually read G, it does not say that if missing persons doesn't exist anymore, you may assert your rights directly against me. If, what it says is, if any time the company, missing persons, shall cease to be entitled to make my services available to capital, or if the company shall fail or refuse to make my services available to capital, I shall make my services available directly to capital. So presumably, there's a reasonable inference that capital then will give, will pay them, but they're not giving the capital these services for free. Indeed, but that hasn't happened here. The missing persons has, the corporation has not refused or become unable to provide Ms. Basio's services to capital. What the exception to the Look-Solely Clause refers to is paragraph 3 of the agreement, which says that if any member asserts that capital is not entitled to his or her services, the corporation agrees that capital may proceed directly against the individuals. Okay. Let's assume that, for the moment, that we think that the Look-Solely 2 Clause is at fault, so that the mirror on that ground would have been wrong and the district court didn't do that. So what's the best argument for why the district court was correct in relying on 23301? Well, the district court was correct because 23301 makes a corporation unable to sue on its own behalf. This contract was entered into by the corporation. It is the corporation's contract, and the corporation may not sue on it. As a result, Ms. Basio cannot sue in a representative capacity, and she has no separate and independent right to sue on it. Well, are you looking? I've already ruled out the Look-Solely 2 Clause. So we have to have an argument without the Look-Solely 2 Clause. Why? What California case says, as a third-party beneficiary, she can't bring this claim against capital? What the cases say, and I think it's sort of the reverse, right? Where is it in the contract that says she has a right? Because the California Supreme Court – I'm sorry, Your Honor. Go ahead. The California Supreme Court has said that a shareholder in Sutter – this is the Sutter case that we cited – a shareholder of a corporation may not sue as an individual on a contract signed by the corporation unless there is a separate and independent right that directly impacts the shareholder. So she's not a shareholder. She is. She's a third-party – well, she may be, but she's bringing the claim as a third-party beneficiary. And so the question is, under California common law, there is lots of cases saying third-party beneficiaries can sue. So why in this case can't she sue? What California case says a third-party beneficiary can't sue on a contract when the promisee is a suspended corporation? Well, there are two – there aren't California cases. There are two Federal cases that deal with the suspended corporation. Okay. There's no California – so you're saying there's no California decision on point because the district court decisions are not binding on us? Well, no. No, no, no. I just – there are two California cases on point in particular, and they're Sophia's and Eastern Aviation. And those two cases say that the mere fact that someone is going to – to receive payment through a corporation does not make them an intended beneficiary that may sue on behalf – on their own individual behalf. In Sophia's, which is 172 CALAP 3rd 583, a contractor tried to sue as a third-party beneficiary of a construction loan agreement between the owner and a bank. And the contractor signed the loan agreement and was bound by part of it and was not permitted to sue. It was because, the court said, the bank did not undertake a direct obligation to the contractor. The bank agreed to pay the owner, and the fact that the owner was going to then pay the contractor did not make the contractor an intended third-party beneficiary able to sue on the contract. So you're saying that under – not – putting aside 23301, under California law, Ms. Basio here is not a third-party beneficiary of the contract. That's correct. Okay. That's correct. She's not a third – and to finish the point, Eastern Aviation is similar. In Eastern Aviation, there was a contract between, let's say, B and A, that required A to make a payment to a joint account held by A and one of its – B and one of its creditors. The payment was not put into the joint account. The creditor sued as a third-party beneficiary, claiming to be a third-party beneficiary of the agreement to put the payment in the joint account. And the court said, you don't have a right, you're not a third-party beneficiary. And specifically cited the restatement, which says if B promises A that B will pay A's creditors directly, then you have an intended third-party beneficiary situation. But if the money B is to pay A is so that A can pay C that goes through the corporation, then you do not have an intended third-party beneficiary situation. And that's exactly what we have here. The only obligation is for capital to pay the corporation, and then the corporation will use that money presumably to pay Ms. Basio. But that alone does not make her an intended third-party beneficiary. Kagan. What is your response to the argument that they asked, and apparently as in the record there's evidence that they asked for the royalty statements and your client wouldn't provide them, so they couldn't – she couldn't resurrect the corporate status? What about that? Well, I'd like to point out one thing, which is they asked capital for the statements. They did not ask the corporation, Missing Persons, for the statements. Capital has provided – For the royalty statements? Correct. Capital has provided the royalty statements to the corporation, Missing Persons, Inc. under the agreement. That is who capital is supposed to provide them to. And the reason capital did not provide them to her directly is that in the Clinton case and other cases which they have cited, where capital or a record company has provided the royalty statements directly to the individuals, it has been used against the record company to claim that the record company has waived or has stopped from asserting that it is the corporation that has the right. So that's sort of catch-22, and that's the reason why capital did not provide it directly. His argument is definitely going to be that his client is in a catch-22 because his position is that there are three human beings, three individuals, and that those statements haven't been provided, that they basically are this corporation. So it's – that's a tough record for you. Well, no, I don't think so, because he has never alleged that the corporation didn't receive. He just did. No, no, no. He said he asked capital for the royalty statements. And your position is that there's a – His – as an individual. He did not ask the corporation, Missing Persons, Inc. And who – Missing Persons, Inc. It's the same three human beings. It was just now suspended. Who was receiving the royalty statements? Was it sent to some defunct address, or who – who was sent those royalty statements? It was sent to the address in the – in the – in the agreement, the address to which it was supposed to be sent. For a corporation that's been dissolved how many years ago? How many decades ago? I'm not entirely sure. I think it was in the 80s. Let me – But the one thing – I'm sorry. Go ahead. No. I was just going to say, I mean, as a practical matter, one of the problems with the argument about a single one of these members bringing this claim is it's not her claim, and it's evident from the fact that capital pays the corporation, and it doesn't actually pay the corporation. Because the way these agreements work is capital has advanced to the corporation a whole lot of money. And as these royalties come in, capital recoups against it. So there's no actual cash here going to anyone. It is merely reducing the very large unrecouped balance that the corporation has. So if it were to go somehow around the corporation, is it some percentage of the royalty that's supposed to go to her? Are they going to claim that capital can't recoup it against what they've already paid the corporation? This is – it all just shows you that she does not have an individual right. We're dealing with California law, right? Yes. Is this a potentially recurring problem? Because as I understand it, what gives rise to this is the whole new digital market that for bands in the 80s creates new possibilities of revenue. So is this possibly a recurring situation? These specific facts may be a recurring situation. I think the fact that people may try to avoid paying taxes through their corporations by just suing them. No, whether we're going to have defunct corporations from the 80s with bands that now are getting a new lease on life because of digital recordings. That's all I'm asking. Oh, well, there have been a number of class actions that have been filed, some of them against my client, many of which have settled. But, yes, that is an issue. Thank you. Thank you. Thank you, Your Honors. I'll try and address this as quickly as I can. First, I wanted to provide Your Honor with excerpts of Record 288 as the letter citation. The issue as to whether or not my client is an incidental third-party beneficiary was never raised below, and it is not appropriate to be considered here. I just want to make that first point. It was raised for the first time by counsel on this appeal here. Secondly, the loan-out corporation was formed so that capital could avoid taxes. Capital avoids paying Social Security taxes. Capital avoids paying Medicare taxes, FICA state payroll taxes on the artist's behalf. So let's be clear. This is not about my client avoiding taxes. It's a mechanism. Well, but is that when the client wasn't an intended beneficiary of the agreement? I'm sorry? Which is your argument? Is your client an intended beneficiary or not? My client is an intended beneficiary. And what you need to do to look to that, Your Honors, is to the contract itself. At ER 237, paragraph 4, the corporation is to pay royalties to the artist. Specifically, my client, Dale Bazio, is defined as an artist. Furthermore, capital records is required, requires the corporation to guarantee each band member be paid $6,000 a year. Those are express, specific terms in the contract that benefit my client. She is absolutely an intended third-party beneficiary. And the court below refused to answer that question. And that is the problem with this, is that that's what needed to be decided by the standard that gives us no guidance as to what that really means. Capital records could have put, because they know how to, they're in lots of their contracts, an express no third-party beneficiary clause. They did not do that in this case. And, in fact, the cases they cite to Your Honors are cases where that was expressly provided. And the last point is that the Sophia's case and all of the cases that capital records cites under California law, none of them found that the underlying party was an intended third-party beneficiary. Not one of them. Thank you, Your Honors. Thank you. The case of Bazio v. EMI Group is submitted. And we'll next hear argument at Navajo Nation v. Department of the Interior.
judges: Schroeder, Ikuta, Christen